1

2                                    THE HONORABLE JOHN C. COUGHENOUR

3

4

5

6

7                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                 AT SEATTLE

9

10   SOUNDVIEW INSURANCE AGENCY,        Case No. C09-0291-JCC
     INC., and TONI CONTI,
11                                      ORDER
                        Plaintiffs,
12
                 v.
13
     BERJAC OF PORTLAND,
14
                        Defendant.
15

16          This matter comes before the Court on Plaintiffs Tony Conti and Soundview's motion

17   for summary judgment dismissal of all counterclaims (Dkt. No. 57), Defendant's response

18   (Dkt. No. 66), Plaintiff's reply (Dkt. No. 69), Defendant's motion for partial summary

19   judgment (Dkt. No. 60), Plaintiff Soundview's response (Dkt. No. 70), and Defendant's reply.

20   (Dkt. No. 72.) Having thoroughly considered the parties' briefing and the relevant record, the

21   Court finds oral argument unnecessary and rules as follows.

22   I.     BACKGROUND

23          When a company requires a significant amount of insurance to operate but chooses not

24   to pay its yearly insurance premiums at once, it can enlist the services of an insurance agent.

25   The insurance agent connects the insured with an insurance financing company that makes an

26

ORDER
PAGE - 1

1  upfront payment of a full year of insurance premiums to an insurance underwriter in exchange

2  for monthly payments from the insured company. This case concerns a series of Premium

3  Finance Agreements ("PFAs") between Berjac of Portland, a company that provides insurance

4  financing, Premier Avia and Pacific Western ("the Insureds"), and Soundview Insurance

5  Agency, the company that brokered the insurance agreement between Berjac and the Insureds.

6  Berjac began financing the Insureds' premiums in 2003. (Order 2 (Dkt. No. 32).) The

7  companies subsequently entered a period of financial difficulty, which led to a default on their

8  financial obligations to Berjac in 2005. (*Id.*) Berjac continued to finance the Insureds'

9  premiums on the condition that Berjac be granted a security interest in the Insureds' equipment

10 and property. (*Id.*) After a number of further financial defaults, Berjac finally ceased providing

11 financing to the Insureds in 2007. (Mot. 13 (Dkt. No. 57).)

12         The PFA between Premier and Berjac included a section titled "Warranties by Agent or

13 Broker." (Soundview Mot. 4 (Dkt. No. 57).) This section details a number of obligations and

14 representations running between Soundview and Berjac. After Soundview filed a complaint

15 against Berjac, Berjac made a series of counterclaims against Soundview alleging breaches of

16 these warranties. (Dkt. No. 30.) The alleged breaches of these warranties are the subject of

17 these motions for summary judgment.

18 **II.      APPLICABLE LAW**

19         Summary judgment is appropriate if, after viewing the evidence in the light most

20 favorable to the nonmoving party, the Court determines there are no genuine issues of material

21 fact. FED. R. CIV. P. 56(c)(2). There is no genuine issue of fact for a trial where the record,

22 taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.

23 *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must

24 inquire into "whether the evidence presents a sufficient disagreement to require submission to

25 a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v.*

26 *Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The moving party bears the initial burden of

ORDER
PAGE - 2

showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## III.    DISCUSSION

### A.  Breach of Contract – Earned Premium

Soundview moves for summary judgment dismissal of Berjac's allegations that Soundview is obligated to pay to Berjac the Insured's earned premium. (Soundview Mot. 16 (Dkt. No. 57).) In the event of a default, the insured's annual premium is divided into two categories: earned and unearned. (Berjac Mot. 2 (Dkt. No. 60).) For example, if an insured's annual premium were $120,000, and its insurance coverage were cancelled after five months as a result of default, there would be about $50,000 of earned premium (for the five months of insurance coverage that had been paid for by the insured) and about $70,000 of unearned premium (for the seven months of coverage for which Berjac had paid the insurance underwriter but the insured had not paid Berjac). (*Id.*)

Berjac seeks to recover the unearned premium in the event of a default in two ways: a) Berjac is granted power of attorney to cancel an insured's policy and b) the insured's right to a refund of any unearned premium is assigned and secured to Berjac. (*Id.*) When default occurs, Berjac generally works to cancel insurance coverage as quickly as possible because the sooner coverage is cancelled, the larger the refunded unearned premiums that Berjac will receive. (*Id.* at 9–11.)

Recovery of earned premium, however, works differently. There are several procedural delays between the time an insured defaults and the time that coverage is cancelled. (*Id.*) This gap creates a period where the insured receives coverage but does not pay for it. The insurance

ORDER
PAGE - 3

underwriter does not refund the premium for this period because coverage was still in effect. It is this earned premium that Berjac seeks to recover. One of the purposes of the PFA is to determine when Berjac can recover this earned premium from the insurance agent. The language in the PFA that covers this earned premium reads as follows:

> The undersigned [Soundview] has receipted for and understands the provision of the BERJAC Preferred Policy Eligibility Requirements form and recognizes that BERJAC will rely completely upon the policy information provided on this contract; therefore the undersigned hereby guarantees payment to BERJAC of earned premium and other sums due BERJAC resulting from nonconformance with the policy eligibility requirements.

(Holcomb Decl. Ex. A (Dkt. No. 61-2 at 3).) The parties now dispute the interpretation of this clause.

Soundview argues that the proper reading of the clause guarantees payment to Berjac for two kinds of sums resulting from nonconformance with the policy eligibility requirements: earned premiums and other sums. Berjac argues that the proper reading of the clause guarantees payment of earned premium regardless of the circumstances, as well as payment of other sums resulting from nonconformance with the policy eligibility requirements. The question is simple: does "resulting from nonconformance with the policy eligibility requirements" modify "earned premium and other sums" or merely "other sums"?

Berjac advances three arguments in support of its position that the earned premium guaranty is not modified by the policy eligibility requirements language.

Berjac's first argument is that Soundview's reading of the clause is unreasonable. Berjac argues that Soundview must be the party responsible for payment of the earned premium when an insured defaults because a) Berjac would have no other way of recouping this loss and b) Soundview is the only party with any financial information about the insured. (Berjac Mot. 11–12 (Dkt. No. 60).) This argument is unpersuasive. Essentially, Berjac is arguing that Soundview's interpretation cannot be reasonable because it would expose Berjac to risk and loss. All contracts allocate risk, though, and Berjac has not established that the only

ORDER
PAGE - 4

1    reasonable allocation of risk is one where the party with the most information about a source of

2    risk bears all losses flowing from that source.

3            Berjac's second argument is that Soundview's reading of the clause is impossible.

4    (Berjac Reply 4 (Dkt. No. 72).) Soundview's reading of the clause would narrow their

5    guaranty from all earned premium to "earned premium resulting from nonconformance with

6    the policy eligibility requirements." (*Id.*) Berjac claims that earned premium cannot

7    conceptually or in reality result from nonconformance with policy eligibility requirements.

8    (*Id.*) Earned premium can result, Berjac claims, only from an underwriter retaining premiums

9    while the insurance policy remains in force. (*Id.*) Although Berjac has filed three different

10   briefs on this matter, this argument appears for the first time in a reply brief. Berjac has

11   referred to the unreasonableness of Soundview's interpretation repeatedly, but failed to

12   mention the *impossibility* of Soundview's preferred interpretation in its previous two briefs.

13   The Court will generally not consider arguments made at this stage of briefing.[1] *Zamani v.*

14   *Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments

15   raised for the first time in a reply brief.")

16           Third, Berjac claims support from the last antecedent rule of statutory construction,

17   which provides that, unless a contrary intention appears in the statute, qualifying words and

18   phrases refer to the last antecedent. *In re Sehome Park Care Center*, *Inc.* 903 P.2d 443, 447

19   (Wash. 1995). "[T]he presence of a comma before the qualifying phrase is evidence the

20   qualifier is intended to apply to all antecedents instead of only the immediately preceding one."

21   (*Id.*) Here, the lack of a comma supports Berjac's claim that the qualifier was not intended to

22   apply to all the antecedents. But the Court's analysis does not end there. In *Sehome*, the

23

24           [1] Even if the Court were to consider the impossibility argument, it would likely fail. In Berjac's
25   opposition to Soundview's motion, it requests additional time "to demonstrate that the earned premium
     lost in this case did, in fact, 'result[] from nonconformance with the policy eligibility requirements,' as
26   explained below . . . .'" (Berjac Resp. 7 (Dkt. No. 66).) Thus, Berjac's own arguments belie its assertion
     that Soundview's reading is impossible.

ORDER
PAGE - 5

1    Supreme Court of Washington applied the last antecedent rule only after determining that the

2    legislative history for the statute in question supported that conclusion. (*Id.* at 446–47.)

3    Soundview points to *Black v. National Merit Insurance Co.*, where the court declined to apply

4    the last antecedent rule because that interpretation would have been unreasonable and

5    inconsistent with surrounding contract language. 226 P.3d 175, 183–84 (Wash. Ct. App. 2010)

6    ("Washington courts do not apply the last antecedent rule inflexibly or take it as always

7    binding.") It would be premature, therefore, to decide this issue on the basis of the last

8    antecedent rule without first evaluating Soundview's claims of reasonableness.

9         Soundview offers two arguments in support of its reading "earned premium" to be

10   modified by "resulting from nonconformance with policy eligibility requirements." Soundview

11   argues that the clause can be read only as a full sentence that says "A; therefore B and C,"

12   where A is a confirmation of Soundview's understanding of the policy eligibility requirements,

13   B is a guaranty of earned premiums and C is a guaranty of other sums. (Soundview Resp. 9

14   (Dkt. No. 70).) If the word "therefore" is to having any meaning in the sentence, Soundview

15   argues, it must mean that policy eligibility requirements are related to the earned premium

16   guaranty. (*Id.*) This is a persuasive argument.  Given the structure of the sentence and the

17   placement of the word "therefore," it is not credible that the earned premium guaranty would

18   be unrelated to conformance with policy eligibility requirements.

19        Finally, Soundview argues that, at best, the clause is ambiguous. Here, the Court

20   wholeheartedly agrees. It is well established that ambiguity in a contract should be interpreted

21   against the party that drafted the contract. *See Wilson Court Ltd. P'ship v. Tony Maroni's*, 952

22   P.2d 590, 597 (Wash. 1998). "A contract provision is ambiguous when its terms are uncertain

23   or when its terms are capable of being understood as having more than one meaning. A

24   provision, however, is not ambiguous merely because the parties suggest opposing meanings."

25   *Sales Creators, Inc. v. Little Loan Shoppe, LLC*, 208 P.3d 1133, 1135 (Wash. Ct. App. 2009).

26

ORDER
PAGE - 6

1   This is not a case where the parties are merely suggesting opposing meanings. The

2   interpretation Soundview proffers is at least as compelling as Berjac's. No reasonable finder of

3   fact could determine that Soundview's interpretation was impossible. It is undisputed that

4   Berjac drafted the contract. Therefore, the Court will construe the clause in favor of

5   Soundview. Accordingly, Soundview's motion for summary judgment dismissal of Berjac's

6   claim for breach of contract – earned premium is GRANTED. Further, Berjac's request for a

7   continuance to prove that the earned premium does result from nonconformance is DENIED.

8   **B.  Breach of Contract – Solvency Warranty**

9       Soundview also moves for summary judgment dismissal of Berjac's claim for breach of

10  a warranty of solvency. (Mot. 21 (Dkt. No. 57).) Berjac alleges that Soundview is "obligated to

11  pay to Berjac any sums due Berjac resulting from nonconformance with policy eligibility

12  requirements, including sums due resulting from a breach of the solvency warranty." (Am.

13  Countercl. ¶ 29 (Dkt. No. 30).) Soundview argues that insolvency is not a policy eligibility

14  requirement, and that it has no obligation to pay for any damages resulting from insolvency.

15  (Mot. 21–22 (Dkt. No. 57).) Dorrity Decl. Ex. 2 (Dkt. No. 58-1).)

16      Berjac's basis for the inclusion of insolvency in the policy eligibility requirements is

17  counterintuitive. A reminder of the language of the PFA is useful:

18

19      The undersigned [Soundview] has receipted for and understands the provisions of
        the BERJAC Preferred Policy Eligibility Requirements form and recognizes that
        BERJAC will rely completely upon the policy information provided on this

20      contract; therefore the undersigned hereby guarantees payment to BERJAC of
        earned premium and other sums due BERJAC resulting from nonconformance

21      with the policy eligibility requirements.

22  (Holcomb Decl. Ex. A (Dkt. No. 61–2 at 3).) Berjac argues that because "resulting from

23  nonconformance with the policy eligibility requirements" is not capitalized, and "Preferred

24  Policy Eligibility Requirements" is capitalized, the former must refer to something broader

25  than the latter. Berjac suggests that "policy eligibility requirements" also refers to "policy

26  information on this contract," which includes representations of solvency by the Insureds.

ORDER
PAGE - 7

1    (Berjac Resp. 9 (Dkt. No. 66).) There is nothing convincing about this argument. Berjac offers

2    no reason for the Court to believe that Soundview's obligations are determined by the

3    capitalization of words rather than by their plain meaning. *See also Getz v. Progressive*

4    *Specialty Ins. Co.*, 22 P.3d 835, 838 (Wash. Ct. App. 2001) ("But nothing in the policy signals

5    that the presence or absence of capital letters has any significance at all.") Berjac also argues

6    that the language "BERJAC will rely completely upon the policy information provided on this

7    contract" should be read as a warranty of the Insured's solvency. (Berjac Resp. 9 (Dkt. No.

8    66).) This imaginative reading has no support in the language of the PFA.

9        Soundview's motion for dismissal of Berjac's solvency warranty claims is GRANTED.

10    **C. Breach of Contract – Authority Warranty**

11        Soundview further moves for summary judgment dismissal of Berjac's claim for breach

12    of a warranty of authority. (Mot. 22 (Dkt. No. 57).) It is not disputed that the Insureds

13    represented to Berjac that Miguel Naputi, the signor of the PFAs, had the authority to bind the

14    Insureds. Berjac claims that Mr. Naputi did not, in fact, have such authority. (Am. Countercl. ¶

15    32 (Dkt. No. 30).) Berjac presents deposition testimony from the Insureds' controller in which

16    he states that Mr. Naputi was listed as the President and Chief Operating Officer on paper, but

17    did not perform these functions in reality. (Harris Dep. 11:7-11 (Dkt. No. 67).)

18        Soundview responds that whatever the internal arrangements of the Insureds, Mr.

19    Naputi was President and COO. As such, he had full legal authority to bind the company to a

20    contract. (Soundview Reply 6–7 (Dkt. No. 69).) Berjac cites no authority for the proposition

21    that the President and COO of a company cannot bind that company to a contract if there is a

22    figure behind the scenes pulling the strings. Berjac may have created a genuine issue of fact as

23    to whether Mr. Naputi actually performed the functions of President and COO. But it offers no

24    reason why this fact would be material as to whether Mr. Naputi had the authority to bind the

25    Insureds.

26        Soundview's motion for dismissal of Berjac's authority warranty claims is GRANTED.

1

**D.  Misrepresentation**

2      Berjac brings a counterclaim against both Soundview and Tony Conti, Soundview's

3 principal, alleging that Soundview and Conti made false assurances to Berjac about the

4 financial health of the Insured, which induced Berjac to refrain from cancelling the Insured's

5 policies. (Am. Countercl. ¶ 38–40 (Dkt. No. 30).) Soundview argues that Berjac has provided

6 no evidence to support this claim. (Soundview Reply 9 (Dkt. No. 69).) Berjac responds that

7 such evidence will be available after completion of two depositions recently ordered by the

8 Court. (April 9 Order (Dkt. No. 59).) Berjac requests a Rule 56(f) continuance to complete the

9 depositions before responding to Soundview's motion for summary judgment dismissal of the

10 misrepresentation claims. (Berjac Resp. 13 (Dkt. No. 66).)

11      Soundview's reasons for opposing the continuance are scant. Soundview argues

12 primarily that Berjac should have conducted depositions during the 14 months during which

13 this matter has been pending. (Soundview Reply 9–10 (Dkt. No. 69).) Given the parties'

14 dispute over whether or not to permit these depositions, however, and the Court's recent order

15 allowing them to proceed, a continuance on this issue is warranted.

16

**E.  Breach of Guaranty – Tony Conti**

17      Berjac also brings a counterclaim against Tony Conti, arguing that his Personal

18 Guaranty makes him liable for all amounts owed by Soundview to Berjac. (Am. Countercl. ¶

19 36 (Dkt. No. 30).) Soundview moves for summary judgment dismissal on the grounds that

20 because Soundview owes nothing to Berjac, Mr. Conti owes nothing either. (Soundview Mot.

21 23 (Dkt. No. 57).) Although most of Berjac's counterclaims are dismissed in this Order, the

22 misrepresentation claim survives. Accordingly, dismissal of Berjac's breach of guaranty claim

23 against Mr. Conti would be premature.

24      Soundview's motion for dismissal of Berjac's breach of guaranty claim is DENIED.

25

26

1  **IV.    CONCLUSION**

2          For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED in

3  part. (Dkt. No. 57.) Defendant's motion for partial summary judgment is DENIED. (Dkt. No.

4  60.) Defendant's request for a rule 56(f) continuance to respond to Plaintiff's motion for

5  dismissal of Defendant's misrepresentation claims is GRANTED. The trial date of July 19,

6  2010, and all pre-trial lodging dates are hereby STRICKEN. A status conference is SET for

7  July 20, 2010 at 9:00 am.

8

9          DATED this 24th day of June, 2010.

10

11

12                                                    _____

13                                                    John C. Coughenour
                                                      UNITED STATES DISTRICT JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 10